IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AWANA CLUBS INTERNATIONAL<br>One East Bode Road<br>Streamwood, IL 60107<br><br>Plaintiff,<br><br>-v-<br><br>LINDA M. SPRINGER<br>in her official capacity as<br>Director of the United States Office<br> of Personnel Management<br>1900 E Street, N.W.<br>Washington, D.C. 20415-0001,<br><br>Defendant. | Civil Action No._____ |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFF'S  MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.      STATEMENT OF FACTS**

**A.      The Combined Federal Campaign**

The Combined Federal Campaign ("CFC") was established by President Kennedy in 1961 as the exclusive means for federal employees[1] to make charitable contributions at their places of work.  *See* 5 C.F.R. § 950.102 (a); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988).  In 2005, federal civilian and postal employees and military personnel were provided the opportunity to contribute to the charities of their choice.  Federal employees and military personnel donated approximately $268.5 million to the

---

[1] Armed forces personnel and postal service employees as well as civil servants participate in the CFC, which is conducted annually.

2005 CFC.  *See* OPM News Release, April 21, 2006.

The Director of the Office of Personnel Management ("Director") supervises the CFC.  5 C.F.R. § 950.102(c).  The Director renders all final decisions regarding disputes.  The Director establishes and maintains an official list of local CFCs and the geographical areas they cover.  The Director also designates Local Federal Coordinating Committees ("LFCCs") which conduct and supervise the local CFC in particular communities.  *See* 5 C.F.R. §§ 950.103 (a) and (b); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988).

The LFCCs each year establish a 6 week period during which federal employees may be solicited for charitable contributions.  The solicitations may not begin before September 1 and may not extend beyond December 15.  Contributions are made either directly to the CFC or are withheld from participating employees' paychecks.  5 C.F.R. § 950.103.

Each year, the Director compiles a list of charities eligible to participate nationally in all local campaigns ("National List").  Each LFCC is required to include the National List charities in the CFC brochures prepared and distributed to eligible federal employees in accordance with CFC regulations.  Upon receiving the brochure, federal employees receive a pledge card and identify charities they wish to support.  5 C.F.R. §§ 950.105, 950.201.

A charitable organization wishing to be included in the CFC applies annually to the Director.  An organization seeking inclusion on the National List, *inter alia*, must certify: (a) it provides services or benefits in at least 15 states or a foreign country over the three year period immediately preceding the campaign year involved; and (b) it is recognized by the Internal Revenue Service as a tax-exempt organization under § 501(c)(3) of the Internal Revenue Code of

1986 ("Code").  5 C.F.R. § 950.202.[2]

The Director is required to issue the National List to all LFCCs each year. As noted in Exhibit E to the complaint, the Director intends to distribute the National List on or about July 31, 2006 *via* display on the OPM web site.  The web site will contain the names of and information about charities included in the National List.

To the National List, LFCCs are permitted to add local charities, in accord with a local application process.  The LFCCs do not have discretion to remove a National List charity from the CFC.  The decision by the Director is final as to which charities are admitted to the CFC as National List charities.

Shortly after July 31, 2006, it is anticipated the LFCCs will commence the printing of brochures for distribution to federal employees.[3]  These brochures must contain the names of and information about National List charities.  (Local charities, *but not National List charities*, will vary from brochure to brochure, depending on the region covered by the local federal campaign.)

---

[2]Section 950.202 states that organizations seeking national list eligibility must "(a) Certify that it [sic] provides or conducts real services, benefits, assistance, or program activities, in 15 or more different states or a foreign country over the 3 year period immediately preceding the start of the year involved. The requirement cannot be met on the sole basis of services provided through an "800" telephone number or by sending materials via the U.S. Postal Service or a combination thereof. A schedule listing those states (minimum 15) or the foreign countries (minimum 1) where the program activities have been provided and a detailed description of the activities in each state or foreign country must be included with the application. While it is not expected that an organization maintain an office in each state or foreign country, a clear showing must be made of the actual services, benefits, assistance or activities provided in each state or foreign country."

[3] The exact printing dates will vary somewhat from one local LFCC to another.

**B. Awana and Its Application for Inclusion in the 2006 CFC**

Awana is a non-profit, charitable corporation exempt from federal income taxes as an organization described in Internal Revenue Code § 501(c)(3). Awana strives to be a strategic partner with churches and ministries in a global effort to ensure the opportunity for all children and youth to be evangelized and discipled in Christ. Awana's mission is to work with its ministry partners in creating and disseminating integrated programs, tools and training that equip leaders to evangelize and disciple children and youth for Christ. In an effort to fulfilling its mission, Awana uses a systematic approach for training children from preschool to high school to know, love and serve Christ. Awana missionaries and their ministry teams provide hands-on training opportunities to local churches. Awana offers special events as outreach tools and service opportunities for young people and their families and friends. (Complaint, ¶ 5).

Awana is a member of Christian Service Charities, a non-profit, tax-exempt organization. Christian Service Charities is a national federation, approved by the Office of Personnel Management ("OPM"), to participate in the 2006 CFC on behalf of its member organizations. (Complaint, ¶¶ 7-9.) *See* 5 C.F.R. § 950.301, *et seq*. On or about January 31, 2006, in advance of the 2006 CFC application deadline, Christian Services Charities submitted its list of eligible member organizations certified for participation in the 2006 CFC. Awana was included in the list and authorized Christian Service Charities to represent it before OPM in connection with the 2006 CFC. (Complaint, ¶ 8).[4]

---

[4] Approved national federations such as Christian Service Charities, eligible to participate in the CFC on behalf of their member organizations, submit annually to OPM lists of their members eligible to participate in a particular CFC. The individual members do not submit formal applications to participate in the particular CFC unless OPM so requests.

In response to a request from defendant, Christian Service Charities submitted a copy of Awana's 2006 CFC application on the required OPM form, to which was appended Awana's Attachment A (as well as miscellaneous other attachments not at issue in this action) that described Awana's services, benefits, assistance and program activities undertaken throughout the United States and Internationally.

Awana described various services it provided and the number of individuals to whom it provided services. These services included conducting and providing Club Meetings, Scholarship Camps, Bible Quizzing, Game Competition, Leadership Conferences, and Basic Leadership Training **in forty-four (44) states and seventeen (17) countries**. (Complaint, ¶ 13.)

On May 4, 2006, the defendant denied Awana's application for inclusion in the 2006 CFC, stating, in pertinent part that Awana: "did not include sufficient information to support a claim that the organization provided or conducted real services, benefits, assistance, or program activities in 15 or more different states of a foreign country over the three-year period immediately preceding January 2006."

Awana appealed the denial on May 17, 2006, but the appeal was sustained by letter on July 21, 2006. No explanation was given for the result. The notice of denial of the appeal is the final administrative action for the 2006 CFC.[5]

## II.    AWANA IS ENTITLED TO INJUNCTIVE RELIEF

### A.    Standards For Granting Preliminary Injunctive Relief

Awana is entitled to preliminary injunctive relief if it demonstrates (i) a substantial

---

[5] 5 C.F.R. §§ 950.102(c) and 950.205(f) state "[t]he Director's decision is final for administrative purposes."

likelihood of success on the merits; (ii) a substantial threat of irreparable injury if the requested relief is not granted; (iii) no other parties will be harmed if temporary relief is granted; and (iv) issuance of the injunction will serve the public interest. *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission*, 259 F.2d 921, 925 (D.C.Cir. 1958); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998).

Awana is not required to prevail on each of these factors. Under *Holiday Tours*, these factors must be viewed as a continuum, with the presence of more than one factor compensating for less of another. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Cityfed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). A court may issue an injunction "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.* Thus, preliminary injunctive relief may issue "with either a high probability of success and some injury or vice versa." *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C. Cir.1985).

**B.    There Is A Substantial Likelihood Awana Will Prevail On The Merits**

In this action, Awana appeals from an informal agency adjudication reviewable under § 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

Pursuant to § 706 of the APA, informal agency action must be set aside "if it fails to meet statutory, procedural or constitutional requirements or if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...'" 5 U.S.C. § 706(2)(A); *Olenhouse v. Commodity Credit Corporation*, 42 F.3d 1560 (10th Cir.1994) quoting *Citizens to*

6

*Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-14 (1971). A reviewing court, in applying the "arbitrary or capricious" standard, asks whether the agency engaged in reasoned decision making. *Clifton Power Corp. v. F.E.R.C.*, 88 F.3d 1258 (D.C. Cir. 1996); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

      1.    <u>Defendant's Denial of Awana's Application Abridges Its First Amendment Rights</u>

Charitable solicitation of federal employees through participation in the CFC is protected by the First Amendment. *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788 (1985).

> The brief statements in the CFC literature directly advance the speaker's interest in informing readers about its existence and goals. Moreover, an employee's contribution in response to a request for funds functions as a general expression of support for the recipient and its views...[T]he CFC literature facilitates the dissemination of views and ideas by directing employees to the soliciting agency to obtain more extensive information...Finally, without the funds obtained from solicitation in various fora, the organization's continuing ability to communicate its ideas and goals may be jeopardized....Thus, the nexus between solicitation and the communication of information and advocacy of causes is present in the CFC as in other contexts.

*Id.* at 3447.

In *NAACP Legal Defense and Educational Fund, Inc. v. Campbell*, 504 F. Supp. 1365 (1981), two charities challenged their exclusion from the CFC. The Manual on Fund-Raising Within the Federal Service for Voluntary Health and Welfare Agencies ("Manual")[6] stated that "[o]nly nonprofit, tax-exempt charitable organizations, supported by voluntary contributions from the general public and providing direct services to persons in the fields of health and welfare services are eligible for approval."

---

[6]The Manual predated the current CFC regulations found at 5 C.F.R. Part 950.

Defendant contended the charities were not eligible to participate in the CFC because they served as legal advocates for groups but did not provide "direct services" to persons such as providing legal representation for individuals unable to afford the cost of retaining private attorneys.

The court found that the "direct services" requirement did not meet First Amendment standards. The term was not defined "and the term [direct services] standing alone, is too vague to comport with the strict standards of specificity required when limits are placed on First Amendment activity." *Id.* at 1367. No established standards existed that would guide the government in determining whether an organization provided "direct services." The "direct services" requirement did not have "the precision necessary to comport with constitutional requirements." *Id.* at 1368.

Similarly, the requirement that eligible CFC national list participants must demonstrate they provide or conduct "real" or "actual" services, benefits, assistance or program activities is similarly vague because the terms "real" or "actual" services, benefits, assistance or program activities are not defined in the regulations. What constitutes "real" or "actual" conduct is capable of subjective determinations without the necessary specificity to permit applicants to conform their conduct to qualifying standards.

There is can be no dispute that in forty-four states over a multi-year period, Awana provided services to thousands of individuals. Awana listed in Attachment A to its 2006 CFC application the states where these activities and services occurred. Awana provided detailed information in its application with regard to the activities described above. Yet, defendant arbitrarily determined that Awana's detailed description of its activities was insufficient without

giving a specific reason.

Without a precise definition of how it failed to meet the regulations, Awana could not possibly foresee what constitutes a sufficiently "real" or "actual" service to qualify for participation in the CFC. Neither could Awana conform its actions to such imprecise standards. Because the regulations are vague as to what qualifies as "real" or "actual" benefits or services to be conducted in each of the 15 states, the regulations defendant relied upon violate the First Amendment.

    2.  <u>Defendant's Denial of Awana's 2006 CFC Application Was Arbitrary and Capricious</u>

Under the "arbitrary or capricious" standard, the court reviews an agency's decision making process and determines whether the agency examined "the relevant data and articulate[d] a satisfactory explanation for its action *including a rational connection between the facts found and the choice made.*" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (emphasis added.); *Touris Records, Inc. v. Drug Enforcement Administration*, 259 F.3d 731 (D.C. Cir. 2001). Agency action will be set aside "if the agency relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, *offered an explanation for its decision that runs counter to the evidence before the agency,* or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturers,* 463 U.S. at 43 (emphasis added).

The grounds upon which the agency made its decision must be clearly articulated and a reasoned explanation for its action must appear in the record. "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* at 50. The court is required to conduct a plenary review of the record to ascertain whether the agency's

action is sustained by the record and supported by "substantial evidence." *Association of Data Processing v. Board of Governors,* 745 F. 2d 677, 683-84 (D.C. Cir. 1984). The agency's decision, therefore, must be supported by facts found in the record.

> When the arbitrary or capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test [applicable to formal adjudication under §706(2)(E)], since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense.

*Id.* at 683. (emphasis in original.)

The Director has acted without authority and in an arbitrary and capricious manner in rejecting Awana's application for inclusion in the 2006 CFC. In her May 4, 2006 letter, the Director rejected Awana's 2006 CFC application stating: the information provided "did not include sufficient information to support a claim that the organization provided or conducted real services, benefits, assistance, or program activities in 15 or more different states or a foreign country over the three-year period immediately preceding January 2006." (Exhibit B to the Complaint).

Awana provided extensive and detailed information about its purposes and activities to defendant in its 2006 CFC application. The services Awana provided included: (1) conducting club meetings where children and leaders participated in games that helped children learn about teamwork, discipline and sportsmanship; (2) holding scholarship camps where staff put together itineraries of activities including sports, crafts, leadership opportunities, and Bible studies, intended to challenge and strengthen campers; (3) holding bible quizzing sessions to test participants' knowledge of the Bible; (4) conducting game competitions; (5) holding leadership conferences where leaders learned new techniques in working with their clubbers, as well as

opportunities to sharpen their skills; and (6) providing basic leadership training.

Awana demonstrated conclusively that it conducted "real services, benefits, assistance or program activities" in *at least* 15 states (44 states and 17 countries) during the previous three year period. (*See* Exhibit A to the Complaint.)

Thus, defendant's rationale for denying Awana's application, *viz.*, that it failed to "clearly show the actual services, benefits, assistance or program activities provided" inexplicably ignores the detailed description of activities provided in Awana's Attachment A.

Numerous applications submitted by Christian Services Charities on behalf of its members that contained similar information were approved. Yet, defendant inexplicably denied Awana's CFC application which contained identical information as submitted with regard to its 2005 CFC application, which defendant approved.

Defendant's decision, therefore, was arbitrary and capricious. Awana submits there is a substantial likelihood it will succeed on the merits.

### C.   Awana Will Suffer Irreparable Injury If Preliminary Injunctive Relief Is Not Granted

The Director will distribute the National List to LFCCS on or about July 31, 2006. *See* CFC schedule attached as Exhibit F to the Complaint. The issuance date of the National List for the 2006 CFC is imminent.

The LFCCs publish this list in a brochure which identifies participating nationally eligible charities and includes a short description of their programs and purposes. The brochures provide essential information relied upon by federal employees in deciding which charities to support through direct contributions and payroll deductions.

Exclusion of Awana from the National List for the 2006 CFC will inflict substantial

economic harm and other injuries which cannot be rectified for several reasons. Awana will be deprived of the exercise of its First Amendment right to communicate its message to millions of federal employees who otherwise would not have the opportunity to receive this information. Not coincidentally, Awana also will be precluded from seeking financial support for its cause during the 2006 CFC. The CFC is the exclusive means whereby federal employees may be solicited for charitable contributions in the workplace. *See, e.g.*, *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988) (injunction was issued preventing enforcement of OPM regulation preventing a national organization and one of its affiliates from simultaneously appearing on the list of eligible organizations distributed to federal employees in their local CFCs). Moreover, given the large number of federal employees located in every state and abroad, Awana cannot solicit contributions directly from this same audience without incurring exorbitant costs.

Finally, Awana cannot recover from the government the amount of contributions it will not receive as a result of the defendant's action. In addition to the loss being difficult if not impossible to quantify, Awana has no remedy at law as the result of the federal government's immunity from damages for these types of suits. *See, e.g., Woerner v. United States Small Business Administration*, 739 F. Supp. 641 (D.D.C. 1990).

The losses described herein are real, immediate and irretrievable absent preliminary injunctive relief.

    **D.**    **Third Parties Will Not Suffer Harm If Preliminary Injunctive Relief Is Granted**

No other parties will suffer harm if the relief requested by Awana is granted. The list of national organizations eligible to participate in the CFC easily can be updated and revised by the

Director to include Awana and be distributed to the local LFCCs *via* OPM's web site. The brochures have yet to be printed and distributed, so no additional expenses for reprinting the brochures need be incurred. Moreover, other eligible charitable organizations participating in the CFC will not be harmed because the 2006 CFC has yet to begun. For these reasons, no harm will occur to other parties if preliminary injunctive relief is granted.

### E.   Grant of Preliminary Injunctive Relief Will Serve The Public Interest

The public interest is undoubtedly served by Awana's participation in the CFC. Inclusion of Awana in the 2006 CFC permits millions of federal employees to learn of the organization, to receive its message, and to make donations to permit the organization to continue to carry out its charitable activities. If the requested preliminary injunctive relief is granted, Awana's participation in the CFC will guarantee that it may continue to provide services to further its mission of training children from preschool to high school to know, love and serve Christ.

Moreover, "there is a strong public interest in meticulous compliance with law by public officials." *Fund for Animals v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993). In the instant action, the defendant's arbitrary denial of Awana's application was based on vague and imprecise standards and on reasons not supported by the record.

Therefore, the public interest will be served by granting the requested preliminary injunctive relief.

### III.   CONCLUSION

For the reasons stated herein, Awana respectfully requests this Court to order the requested preliminary injunctive relief.

13

Respectfully submitted,
AWANA CLUBS INTERNATIONAL
By Counsel


 /s/
Bernard J. DiMuro, Esq. (D.C. Bar #393020)
DIMURO GINSBERG, P.C.
908 King Street, Suite 200
Alexandria, Virginia 22314
(703) 684-4333
(703) 548-3181 (facsimile)

Noland MacKenzie Canter, Esq. (D.C. Bar #93616)
Mark J. Diskin, Esq. (D.C. Bar #334086)
COPILEVITZ & CANTER, LLC
1900 L Street, N.W., Suite 215
Washington, D.C. 20036

*Counsel for Plaintiff*